UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JAMES SAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00124-JMS-MJD |
| | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for Writ of Habeas Corpus
And Denying a Certificate of Appealability**

Petitioner James Saylor is serving a 138-year sentence for his 2012 Allen County, Indiana convictions for child molesting, neglect of a dependent, and battery. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Saylor's petition for a writ of habeas corpus is **denied** and the action is **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I. Factual and Procedural Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On appeal from the denial of post-conviction relief, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> In April 2005, Saylor moved into a home in Madison with his wife ("Wife") and four children. B.D., then a ten-year-old girl, and M.D., then a thirteen-year-old boy, are Wife's children from a previous relationship. J.M.S. is Saylor's son from a previous relationship and was approximately eighteen years old. J.S., who was seven years old at the time, is the only child Saylor and Wife have together.
>
> Over a period of approximately eighteen months, Saylor forced B.D. to have sexual intercourse and oral sex with him, forced M.D. and B.D. to have sexual intercourse and oral sex with each other while Saylor watched, and taught B.D. to have sex

with the family dog. Saylor threatened to harm B.D. if she told anyone what was happening. But in July 2006, when B.D. was eleven years old, she told a family friend, Jasmine Mardello, who notified the Department of Child Services. Saylor was arrested the next day. Kathy Scifres, a forensic-nurse examiner, conducted a physical examination of B.D. The State ultimately charged Saylor with two counts of Class A felony child molesting (both involving B.D.), Class B felony vicarious sexual gratification (based on Saylor forcing B.D. to engage in sexual intercourse with M.D.), Class D felony intimidation (based on Saylor's threats to B.D. if she told anyone), and being a habitual offender.

A jury trial began in August 2007. The trial was bifurcated, with the first phase addressing the child-molesting, vicarious-sexual gratification, and intimidation charges, and the second phase addressing the habitual-offender charge.

During the first phase of trial, B.D., M.D., and J.S. all testified that Saylor had sexual intercourse with B.D. and forced M.D. to have sexual intercourse with B.D. Mardello testified about B.D.'s initial disclosure to her, and Scifres testified about her physical examination of B.D., which revealed a healed vaginal tear and hymenal thinning that was consistent with the penetration of her vagina by a blunt or round object, such as a penis. Scifres also testified that B.D. told her that she had sexual intercourse with Saylor but that B.D. did not tell her that she had sexual intercourse with anyone else.

During closing argument, defense counsel argued that the State's medical evidence did not prove that Saylor molested B.D. because B.D. had sexual intercourse with other people, and they could have caused her injuries. As part of defense counsel's lengthy argument on this point, he said, "Mr. Saylor was not the only person that was having sex with [B.D.]." Tr. p. 908.

The jury found Saylor guilty of the child-molesting, vicarious-sexual gratification, and intimidation charges. While the jury was in the jury room waiting for the habitual-offender phase of trial to begin, Saylor's trial counsel requested a brief recess to discuss the habitual-offender charge with Saylor. At the end of the recess, defense counsel told the trial court that Saylor had decided to plead guilty.

At sentencing, the trial court merged Saylor's conviction for intimidation with his conviction for vicarious sexual gratification and sentenced Saylor to 45 years for each of his child-molesting convictions, 18 years for his vicarious sexual-gratification conviction, and 30 years for the habitual-offender enhancement, for an aggregate term of 138 years. [On direct appeal, Petitioner argued: 1) the trial court erred in permitting the State to amend the charging information; 2) the trial court erred in permitting photographs of the victim taken during the forensic examination; 3) admitting B.D.'s video statement about her having been abused by Saylor; 4) the trial court committed error when it allowed evidence regarding B.D.'s simulating or having sex with a dog, or when it admitted the eyewitness testimony of J.S. that Saylor sexually abused B.D. and M.D.; and 5) whether Petitioner's

> sentence was appropriate. Ex. I.]. We affirmed on direct appeal. *Saylor v. State*, No. 39A01-0712-CR-574 (Ind. Ct. App. Sept. 17, 2008), trans. denied [on October 29, 2008. Ex. C].
>
> Saylor filed a petition for post-conviction relief [on April 20, 2009, which was amended by counsel] in 2014. Following a hearing, the judge entered findings of fact and conclusions of law denying relief.

*Saylor v. State*, No. 39A05–1503–PC–113, 55 N.E.3d 354, 357-58 (Ind. Ct. App. 2016).

On appeal from the denial of post-conviction relief, Mr. Saylor argued that his trial counsel was ineffective for: (1) not objecting to the trial court's failure to administer an oath to B.D. before she testified at trial; (2) not objecting to the prosecutor's alleged impermissible vouching during closing argument; (3) allegedly admitting his guilt to both counts of Class A felony child molesting during closing argument; (4) failing to advise him of his *Boykin* rights before pleading guilty to being a habitual offender; (5) failing to inform the jury that a number of the State's witnesses received immunity for their testimony; (6) failing to inform the jury of the victim's prior sexual acts; 7) failing to move to dismiss because he should have allegedly been charged with incest as opposed to child molesting and vicarious sexual gratification; and (8) the cumulative effect of defense counsel's errors amounted to ineffective assistance of counsel. On May 23, 2016, the Indiana Court of Appeals affirmed in part the denial of post-conviction relief, but remanded the case for a new trial with respect to the habitual offender portion of the case. *Id.* at 367. His habitual offender charge is still pending trial court.

Mr. Saylor sought review from the Indiana Supreme Court, specifically addressing three claims in detail: (1) whether trial counsel was ineffective for not objecting to the trial court's failure to administer an oath to B.D. before she testified at trial; (2) whether trial counsel was ineffective for not objecting to the prosecutor's alleged impermissible vouching during closing argument; and (3) whether trial counsel was ineffective for allegedly admitting Petitioner's guilt to both counts

3

of Class A felony child molesting during closing argument. He also incorporated, by reference to his brief on post-conviction review, the other claims of ineffective assistance of counsel he had raised to the Indiana Court of Appeals, but for which the Indiana Court of Appeals allegedly did not address in its opinion. On November 3, 2016, the Indiana Supreme Court denied transfer.

On March 17, 2017, Mr. Saylor filed this petition for a writ of habeas corpus.

## II.     Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Saylor's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"); *see Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen*

4

*v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III. Discussion

Mr. Saylor raises six claims of ineffective assistance of trial counsel in his petition: (1) failing to administer oath to B.D.; (2) filing to object to prosecutorial misconduct; (3) conceding guilt during closing argument; (4) failing to inform the jury about witness immunity agreements; (5) failing to inform the jury about the victim's prior sexual history; and (6) the cumulative impact of his errors.

The respondent argues that claims four through six are procedurally defaulted, and that the Indiana Court of Appeals reasonably applied clearly established federal law in concluding that Mr. Saylor's trial counsel was effective.

In reply, Mr. Saylor asserts he did not procedurally default his claim and reiterates his arguments that his trial counsel was ineffective.

### A. Procedural Default

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. In Indiana, that means presenting his arguments in a petition to transfer to the Indiana Supreme Court. *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992).

On appeal from the denial of post-conviction relief, Mr. Saylor argued that his trial counsel provided ineffective assistance of counsel on eight different grounds. *See* Dkt. No. 15-17 at 5. On May 23, 2016, the Indiana Court of Appeals affirmed the denial of post-conviction relief, but only allegedly addressed three of the grounds. *Saylor*, 55 N.E.3d at 359-365. In his petition to transfer to the Indiana Supreme Court, Mr. Saylor presented two questions for review:

> I. This Court should grant transfer and issue a revised opinion because this Court failed to rule on multiple issues properly before the Court in the Brief of Appellant.
>
> II. This Court should grant transfer and issue a revised opinion because the determination that Saylor's trial attorney was effective is based upon an unreasonable determination of the facts found in the Record on Appeal, and it contravenes existing precedent.

Dkt. No. 15-17 at 2.

Relying on Indiana Appellate Rule 57(G) and *Lockridge v. State,* 809 N.E.2d 843 (Ind. 2004), the Respondent argues that Mr. Saylor, by incorporating the arguments in his appellate brief, failed to properly present claims four through six to the Indiana Supreme Court. Mr. Saylor asserts otherwise.

*Lockridge* holds that "[i]n a petition to transfer, mere reference to argument and/or authorities presented in brief to [the Court of Appeals], without an explanation of the reasons why transfer should be granted, does not satisfy [Indiana Appellate] Rule 57(G)(requirements of a transfer petition)." *Lockridge*, 809 N.E.2d at 844. However, "Appellate Rule 57(G)(4) should not be read to require a party to repeat all of the arguments made in the brief to the Court of Appeals." *Id.* Thus, "the 'argument' contained in a brief in support of a petition to transfer should primarily be an argument as to why the Supreme Court should grant transfer[.]"

In this case, Mr. Saylor presented the argument to the Indiana Supreme Court that the Court of Appeals failed to provide an opinion that addressed these issues and he wished for a ruling on the merits on these issues, and listed the issues for which he wanted a ruling. However, Mr. Saylor failed to provide "operative facts and controlling legal principles" for these issues.

In the interest of judicial economy, the Court here will bypass the issue of procedural default and discuss these claims on the merit below. *See Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (holding that because the procedurally defaulted claims lacked merit, the Court could bypass a "difficult" actual innocence claim and address the defaulted claims on the merits); *see also Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (declining to address whether certain claims were procedurally defaulted because, "[i]n the interest of judicial economy, … the case may be more easily and succinctly affirmed on the merits").

### B. Assistance of Counsel

#### 1. Indiana Court of Appeals' Application of *Strickland*

*Strickland v. Washington,* 466 U.S. 668, 684 (1984), supplies the clearly established federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

"It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (internal citations and quotation marks omitted).

In deciding the issue of ineffective assistance of counsel, the Indiana Court of Appeals recited the *Strickland* standard. *Saylor*, 55 N.E.3d at 359.

2. Failing to Administer Oath – Indiana Court of Appeals' Application of *Strickland*

Mr. Saylor's first claim of ineffective assistance of counsel is that his counsel failed to object when the trial court failed to administer an oath to twelve-year-old B.D. before she testified at trial.

The Indiana Court of Appeals explained the standard for a claim of ineffective assistance due to the failure to object: "the defendant must show an objection would have been sustained if made." *Id.* (citing *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007). Applying this standard and the *Strickland* standard, the Indiana Court of Appeals held:

> Indiana Evidence Rule 603 requires that "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience." *See also* Ind. Const. art. 1, § 8 ("The mode of administering an oath or affirmation, shall be such as may be most consistent with, and binding upon, the conscience of the person, to whom such oath or affirmation may be administered."); Ind. Code § 34–45–1–2 ("Before testifying, every witness shall be sworn to testify the truth, the whole truth, and nothing but the truth. The mode of administering an oath must be the most consistent with and binding upon the conscience of the person to whom the oath may be administered."). No particular form of oath is required, and the form may be applied flexibly so as to be meaningful to children and mentally impaired witnesses. 13 Robert Lowell Miller, Jr., Indiana Practice, *Indiana Evidence* § 603.101 (3d ed.2007); *see also Perry v. State*, 524 N.E.2d 316, 317 (Ind. 1988) (explaining that it is not a "realistic approach" to give a child an adult oath because that would not show "whether a small child understands that he is to tell the truth"). Whether a witness has sufficiently declared by oath or affirmation to testify truthfully is a determination to be made by the trial court. 13 Miller, *supra*, § 603.101.
>
> In addition, Indiana Evidence Rule 601 addresses competency of witnesses. Rule 601 presumes that every person is a competent witness unless otherwise provided by statute or rule. "A child is only competent to testify if it can be established" that the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Ackerman v. State*, No. 49S00–1409–CR–770, 51 N.E.3d 171, 191–92, 2016 WL 1329532 (Ind. Apr. 5, 2016) (noting that it "seems highly

> unlikely that a three-year-old would be able to comprehend that she was under oath and required to only tell the truth"); *Kien v. State*, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007), *trans. denied*. Like oaths, there is no prescribed form to determine whether a child is competent to testify. *See LeMaster v. State*, 498 N.E.2d 1185, 1187 (Ind. 1986). The trial court has discretion to determine whether a child witness is competent based on the court's observation of the child's demeanor and the child's responses to questions posed by counsel and the court. *Richard v. State*, 820 N.E.2d 749, 754–55 (Ind. Ct. App. 2005), *trans. denied*.
>
> Saylor claims that the trial court's "questioning was insufficient to constitute an oath" because "[n]othing in the trial court's questioning of B.D. made testifying truthfully binding upon her conscience." Appellant's Reply Br. p. 2. We disagree. The trial court examined B.D. to simultaneously (1) determine whether she was competent to testify and (2) administer an oath to her. The trial court explored whether B.D. was capable of understanding her obligation to tell the truth, inquired whether B.D. could distinguish between the truth and a lie and knew what the truth was, and was satisfied that B.D. had given an oath. Because the trial court properly administered an oath to B.D., Saylor has not demonstrated that the trial court would have sustained an objection by defense counsel.

*Id.* at 360-61. This assessment is compatible with both prongs of the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011). Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

### 3. Prosecutorial Misconduct – Indiana Court of Appeals' Application of *Strickland*

Mr. Saylor's second claim of ineffective assistance of counsel is that his counsel failed to object to the prosecutor's impermissible vouching during closing argument.

The Indiana Court of Appeals explained that under Indiana law,

> It is improper for a prosecutor to make an argument that takes the form of personally vouching for a witness. However, a prosecutor may comment on a witness's credibility if the assertions are based on reasons arising from the evidence presented at trial. In addition, a prosecutor may properly argue any logical or reasonable conclusions based on his own analysis of the evidence.

*Saylor*, 55 N.E.3d at 361-62 (internal citations removed).

Applying this standard and the *Strickland* standard, the Indiana Court of Appeals held:

As for B.D., Saylor claims that the prosecutor impermissibly vouched for her during closing argument:

> Let's talk about [B.D.]. She is being truthful about her stepfather. [B.D.] is a credible witness.

Tr. p. 884. The prosecutor then said that the trial court would give the jury an instruction on credibility because it was the jury's job to determine credibility and that when the jury considered the medical evidence and the testimony from the other witnesses, B.D.'s testimony "ma[de] sense" and was "support[ed]." *Id*. at 884, 885–86.

We find that the prosecutor properly commented on B.D.'s credibility because the assertions were based on reasons arising from the evidence presented at trial. B.D.'s credibility was a significant topic addressed by both sides during closing arguments. The State argued that B.D. was credible because her testimony was consistent with the medical evidence and with the testimony from the other witnesses. Because the prosecutor did not personally vouch for B.D., defense counsel was not ineffective for not objecting to this statement.

Saylor next claims that the prosecutor impermissibly vouched for Mardello. He points to this portion of the prosecutor's closing argument:

> [T]he emotion in Jasmin [Mardello's] testimony supports the credibility of [B.D.]. I argue to you Jasmin Mardello absolutely believes that happened because of the experiences that she had [when B.D. first revealed the abuse to her]. She was crying in court because she was reliving the pain, and she was reliving the horror of [B.D.]. That means you may make a reasonable inference that [B.D.] is a truthful witness.

*Id*. at 889.

Notably, the prosecutor did not argue that Mardello was credible because she was emotional; rather, the prosecutor argued that, based on Mardello's demeanor in court, the reasonable inference was that B.D. was telling the truth when she first revealed the abuse to Mardello. This was a proper argument based on the logical or reasonable conclusions from the prosecutor's analysis of the evidence. Accordingly, defense counsel was not ineffective for not objecting to this statement.

Last, Saylor claims that the prosecutor impermissibly vouched for M.D. by arguing that M.D. "told the truth" because he could get in trouble for having sexual relations with B.D. Tr. p. 925. But the prosecutor argued the opposite—that M.D. could *not* be prosecuted based on his testimony in this case because the State promised not to prosecute M.D. *See* Ex. 13 (letter from the prosecutor to the children's guardian ad litem explaining that "none of the children in this matter will be subject to criminal

prosecution as a result of any testimony they may provide concerning ... Saylor."). The prosecutor's argument was proper because it was based on reasons arising from the evidence presented at trial. Accordingly, defense counsel was not ineffective for not objecting to this statement.

*Id.* at 361-63. This assessment is compatible with both prongs of the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy,* 132 S. Ct. at 495. Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

### 4. Admission of Guilty – Indiana Court of Appeals' Application of *Strickland*

Mr. Saylor's third claim of ineffective assistance of counsel is that his counsel admitted Mr. Saylor's guilt during closing argument.

The Indiana Court of Appeals explained that under Indiana law,

> An attorney's statements during opening statement or closing argument may constitute judicial admissions that are binding on the client. To constitute a judicial admission, the attorney must make "a clear admission of a material fact." "Improvident or erroneous statements or admissions" resulting from "unguarded expressions or mistake or mere casual remarks, statements[,] or conversations" are not judicial admissions. It is "particularly important" in criminal cases that the defendant "be protected from inadvertent slips of the tongue of his attorney" and be "protected against any and every statement of his counsel which is not definitely and purposely intended as and for an admission." "[B]efore a statement by an attorney can be held to be [a judicial] admission it must be given a meaning consistent with the context in which it is found."

*Saylor*, 55 N.E.3d at 363 (internal citations removed).

Applying this standard and the *Strickland* standard, the Indiana Court of Appeals held:

> During closing argument, defense counsel said that "Mr. Saylor was not the only person that was having sex with [B.D.]...." Tr. p. 909. This statement is part of counsel's four-page argument that the State's medical evidence, particularly Scifres's testimony about B.D.'s healed vaginal tear and hymenal thinning, did not prove that Saylor molested B.D. Defense counsel pointed out that B.D. gave Scifres an inaccurate sexual history—that is, B.D. told Scifres that Saylor had sexual intercourse with her, but she did not tell Scifres about sexual intercourse with anyone else. Defense counsel then provided several other explanations for B.D''s injuries—including the vibrator found in M.D.'s room and the fact that B.D. had

12

sexual intercourse with M.D., M.D.'s friend, and the family dog. Based on this evidence, defense counsel concluded that "the fact that [B.D.] has a stretched hymen, has indications of sexual activity, the conclusion doesn't come that it's Mr. Saylor." Tr. p. 910.

When taken in context, defense counsel did not admit that Saylor committed both counts of Class A felony child molesting. Saylor's defense at trial was that he did not molest B.D. or force M.D. to have sexual intercourse with B.D., and defense counsel vigorously and consistently argued this during closing argument. Nevertheless, in making a point about the State's medical evidence, defense counsel inadvertently said that Saylor "was not the only person that was having sex with" B.D. At the post-conviction hearing, defense counsel testified that he did not remember making this statement. P–C Tr. p. 10. And notably, the State did not capitalize on it during its rebuttal argument, which supports the conclusion that defense counsel did not intend for it to be an admission to both counts of Class A felony child molesting. Accordingly, we find that defense counsel's inadvertent statement, although a mistake, was not a judicial admission. *See Collins*, 366 N.E.2d at 232 (concluding that "an inadvertent admission made by counsel in the heat of argument" was not a judicial admission). Nevertheless, we are convinced that in light of the overwhelming evidence of Saylor's guilt, there is not a reasonable probability that, but for defense counsel's mistake, the result of the proceeding would have been different.

*Id.* at 361-63. This assessment is compatible with both prongs of the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy,* 132 S. Ct. at 495. Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

     5.     <u>Failing to Inform Jury about Witness Immunity – Indiana Court of Appeals' Application of *Strickland*</u>

Mr. Saylor's fourth claim of ineffective assistance of counsel is that his trial counsel failed to inform the jury about the immunity agreement given to B.D., M.D., and J.S. in exchange for their testimony against Mr. Saylor pursuant to a letter sent to the children's guardian ad litem, dated August 7, 2007. Mr. Saylor asserts that the information was never adequately revealed to the jury.

Mr. Saylor asserts that the Indiana Court of Appeals failed to address this issue in its opinion. Mr. Saylor is mistaken. In footnote 6 of its opinion, the Indiana Court of Appeals stated:

> Regarding this letter, Saylor argues that defense counsel was ineffective for not telling the jury that the children were not subject to prosecution for their testimony against Saylor. The record shows, however, that the letter was admitted into evidence at trial, *see* Tr. p. 626–27 (defense counsel stipulating to the letter's admission), and the prosecutor talked about it during closing argument, *see id.* at 925 ("Did you al[l] read that letter from the State of Indiana?").

*Saylor*, 55 N.E.3d at 363, n. 6. This assessment is compatible with the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy,* 132 S. Ct. at 495. Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

### 6. Failing to Inform Jury about Victim's Prior Sexual History – Indiana Court of Appeals' Application of *Strickland*

Mr. Saylor's fifth claim of ineffective assistance of counsel is that his trial counsel failed to inform the jury that the victim, B.D., had been having sexual intercourse with other individuals for two years. Mr. Saylor asserts that the jury thus mistakenly concluded that the damage to the hymen could only have been caused by him, rather than one of the other sexual partners.

Mr. Saylor asserts that the Indiana Court of Appeals failed to address this issue in its opinion. Again Mr. Saylor is mistaken. In footnote 8 of its opinion, the Indiana Court of Appeals stated:

> Saylor argues that defense counsel was ineffective for not telling the jury that B.D. had sexual intercourse with other people. To the contrary, defense counsel argued this during closing argument, and the record includes testimony from the DCS family case manager that B.D. reported sexual abuse by a man named "Joe" in 2004 and sexual intercourse with M.D.'s friend, Tr. p. 790, 792; testimony from a neighbor that Saylor taught B.D. to have "sex" with the family dog and then B.D. had "inappropriate relations" with the neighbor's dog, *id.* at 764–65; and testimony from Saylor that B.D. and M.D. had sexual intercourse with each other, *id.* at 837.

14

*Saylor*, 55 N.E.3d at 364, n. 8. This assessment is compatible with the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy,* 132 S. Ct. at 495. Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

       7.      Cumulative Impact of Errors – Indiana Court of Appeals' Application of *Strickland*

Mr. Saylor's sixth and final claim of ineffective assistance of counsel is that the cumulative effect of the errors of his trial counsel lead to the conclusion that he was denied effective representation.

Mr. Saylor asserts that the Indiana Court of Appeals failed to address this issue in its opinion. Mr. Saylor is mistaken. In its own section, titled "Cumulative Effect," the Indiana Court of Appeals stated:

> Finally, Saylor argues that when you consider the cumulative effect of defense counsel's errors, they amount to ineffective assistance of counsel. While the cumulative effect of a number of errors can render counsel's performance ineffective, *see Grinstead v. State*, 845 N.E.2d 1027, 1036 (Ind. 2006), here there is only one error by defense counsel: his isolated mistake during closing argument. This argument therefore fails.

*Saylor*, 55 N.E.3d at 364-65. Having already reasonably considered and rejected the argument relating to the closing argument in isolation, the Indiana Court of Appeals' assessment of cumulative effect is compatible with the federal *Strickland* standard, and because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy,* 132 S. Ct. at 495. Accordingly, Mr. Saylor is not entitled to habeas relief on this ground.

## IV. Conclusion

This Court has carefully reviewed the state record in light of Mr. Saylor's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus

proceeding permits. Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Saylor's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

V.  Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that the petitioner has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 6/18/2018

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JAMES SAYLOR
952625
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Henry A. Flores, Jr.
INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov